Stewart LEMON and Steve Luckett, Plaintiffs,

v.

**Joyce E. TUCKER, Defendant.**

No. 84 C 4021.

United States District Court.
N.D. Illinois, E.D.

May 8, 1987.

Gary H. Palm, Jonathan K. Baum, Chicago, Ill., for plaintiffs.

Jeffrey W. Finke, Atty. Gen. of Illinois, Neil Hartigan, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

On April 14, 1987, defendant Joyce E. Tucker renewed her plea for this court to abstain from adjudicating this action. The renewed abstention request, predicated on the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), comes one week after the Supreme Court issued its newest explication of that doctrine in the much-publicized case of *Pennzoil Co. v. Texaco, Inc.*, —— U.S. ——, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). As will be discussed, the *Pennzoil* case potentially expands the number of situations in which a federal district court must abstain under *Younger.* Nevertheless, the facts and reasoning of *Pennzoil,* as well as the overall development of the *Younger* doctrine over the past sixteen years, conclusively establish that abstention is not warranted in this case. Accordingly, this court's decision in its Memorandum Opinion and Order of March 4, 1987, not to abstain under the *Younger* doctrine, will not be set aside. Before addressing the *Pennzoil* decision,

the court will review the doctrinal basis of *Younger* as reflected in the *Younger* case itself and in the major post-*Younger* cases. It is hoped that this discussion will permanently lay to rest defendant's belief that *Younger* abstention is mandated in this case.

*Younger* originally stood for the simple proposition that under principles of comity, equity, and federalism, a federal court may not enjoin a pending state criminal prosecution, even though the criminal prosecution may violate the state defendant's federal constitutional rights, except in the rare situation where the state criminal enforcement is brought in bad faith or to harass. *Younger* "is founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Kugler v. Helfant,* 421 U.S. 117, 124, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975). Since "no citizen or member of the community is immune from prosecution, in good faith, for his alleged act," *Younger,* 401 U.S. at 46, 91 S.Ct. at 751, there is no justification for intervention by a court of equity to rule on claims which may be raised as a defense to the criminal prosecution and which, if meritorious, would result in adequate relief in that forum. *Id.* at 45–46, 91 S.Ct. at 751. The state's interest in administering its criminal laws without federal interference is sufficiently weighty to mandate federal abstention. But the state proceeding must provide a meaningful opportunity for the state defendant to fairly pursue his constitutional objection. *See Juidice v. Vail,* 430 U.S. 327, 338, 97 S.Ct. 1211, 1218–19, 51 L.Ed.2d 376 (1977). Otherwise, *Younger* abstention will not apply. *Id; Younger,* 401 U.S. at 45, 91 S.Ct. at 751; *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (state tribunal found to be incompetent because of bias). Although the *Younger* case, strictly speaking, forbids only injunctions of pending state criminal proceedings, it became immediately clear after *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), that *Younger* principles also bar federal declar-

atory relief against pending state prosecutions as well.

In *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the Court extended the abstention principle of *Younger* even further to include certain state-initiated *civil* proceedings. In that case, the state of Ohio had brought civil actions under its obscenity laws to "abate" the showing of obscene movies in a theater licensed by Pursue. Because these civil actions were "in aid of and closely related to criminal statutes," the Court reasoned that *Younger* abstention must control. *Id.* at 604, 95 S.Ct. at 1208. *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), expanded even further on the application of *Younger* to civil cases and quickly put to rest the limitation of *Huffman* that the pending state action be "closely related to criminal statutes." In that case, Vail was found in civil contempt of an order issued by a New York state judge to appear and be deposed in a statutory proceeding to force him to satisfy a previous civil judgment. He sued in federal court to enjoin the use of New York's statutory contempt procedures. The Supreme Court held that *Younger* barred the injunction. It reasoned that the state's interest in the contempt process, "through which it vindicates the regular operation of its judicial system," was "important" enough to warrant the application of *Younger*, "so long as that system itself affords the opportunity to pursue federal claims within it," and even though no criminal or "quasi-criminal" law was being enforced. *Id.* at 335, 97 S.Ct. at 1217.

Even though *Juidice* expanded upon *Huffman* to bar injunctions of all pending "important" state civil actions, it is significant that in both cases, that state proceeding was prosecuted by a state officer (in *Huffman*, it was an Ohio prosecutor and sheriff; in *Juidice*, it was the judicial officer who found Vail in civil contempt). Both state proceedings were defended by the federal plaintiffs, who in turn sued those state officers in the counterpart federal actions. In both cases, the Court reaffirmed and embraced the *Younger* premise that the federal plaintiff first interpose his federal claim as a defense to the state proceeding, so as to avoid unnecessary interference with the prosecution of important state interest. *See Huffman*, 420 U.S. at 603–05, 95 S.Ct. at 1207–1209; *Juidice*, 430 U.S. 334–37, 97 S.Ct. at 1216–18.

This premise of *Younger*, and its applicability to cases in which "important" state interests are being enforced, underlies yet another *Younger* case, *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). There, the State of Illinois brought a state court civil action to recover welfare payments which, it alleged, defendants had obtained by fraud. The state, at the outset of the state action, had attached some of the defendants' assets. The state defendants then brought a federal action challenging the constitutionality of the attachment procedures authorized by Illinois law and used against them. The Supreme Court held *Younger* applicable. "[T]he suit and accompanying writ of attachment were brought to vindicate important state policies such as safeguarding the fiscal integrity of [the state's public assistance programs]." *Id.* at 444, 97 S.Ct. at 1918. The Court was careful to acknowledge that *Younger* would be inapplicable and federal injunctive relief would be warranted if, as a matter of Illinois law, it would not have been possible for the federal plaintiffs to challenge the constitutional validity of the attachment procedure as defendants in the Illinois litigation. *Id.* at 447 & n. 10, 97 S.Ct. at 1919–20 & n. 10. Also, as was the case with *Juidice* and *Huffman*, the state proceeding in *Trainor* was prosecuted by state officials (officials of the Illinois Department of Public Aid) and was defended by the federal plaintiffs, who in turn were suing the state officers in the federal action. As in *Juidice* and *Huffman*, *Trainor* embraced the basic *Younger* principle that a federal plaintiff first set up and rely upon his constitutional claim as a defense in the state court proceeding so as to preclude unnecessary federal intrusion into the functioning of the states. *Trainor*, 431 U.S. at 441–444, 97 S.Ct. at 1916–18.

The leading scholars in this area of *Younger* abstention have drawn several

significant conclusions from these Supreme Court developments. One is of central importance to this case: "These cases clearly indicate that *Younger* is presumptively applicable to any state proceeding in which *the state* is seeking to enforce important public policies." P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System*, ch. 7, § 3 at 281 (2d ed. Supp.1981) (emphasis added). Similarly, "[t]he basic premise of the [Younger cases] is that federal equitable intervention is not warranted if the federal plaintiff can secure a full and fair day in court on his constitutional claims by raising them *by way of defense in a state enforcement proceeding* which is already underway or is imminent anyway. The central notion is that *defending* the *state prosecution* provides an adequate remedy, one that is the substantial equivalent of the remedy in federal court." *Id.* at 283 (emphasis added).

With this background in mind, *Pennzoil* can be placed in proper perspective. In *Pennzoil*, the federal plaintiff (Texaco) sought injunctive relief against Pennzoil's execution of a multibillion dollar judgment that a Texas trial court had rendered against Texaco (the state defendant) and in favor of Pennzoil. Under Texas law, a judgment debtor is entitled to suspend the execution of a judgment only if he posts sufficient bond or security. Texaco believed this Texas law violated its rights under the federal constitution and various federal statutes. However, Texaco did not argue to the trial court, as it could have, that the execution of the judgment conflicted with federal law. *See Pennzoil*, —— U.S. ——, ——, 107 S.Ct. at 1522–23, 1527–29. Rather, Texaco filed a federal action under 42 U.S.C. § 1983 against the state plaintiff (Pennzoil) seeking to enjoin Pennzoil from taking any action to enforce its judgment. *Id.* at ——–——, 107 S.Ct. at 1522–25. Pennzoil was found to be acting under color of state law in attempting to execute the Texas judgment, and this finding was not challenged or disturbed by the Supreme Court. *Id.* (noting that the Court of Appeals found Pennzoil to be acting "under color of" state law for 42 U.S.C.

§ 1983 purposes since Pennzoil would have to act jointly with state agents by calling on state officials to attach and seize Texaco's assets and that this constitutes state action under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)); *see also id.* at ——–——, 107 S.Ct. at 1535–36 (Stevens, J., and Marshall, J., concurring in the judgment and stating that the lower courts were correct in finding Pennzoil to be a state actor). Under these facts, the Supreme Court held that the principles of *Younger* counseled in favor of federal abstention.

The Supreme Court's reasoning and result follow from a straightforward, though slightly broadened view of *Younger*. First, the Supreme Court observed that the Texas state court action (which was prosecuted by a state actor, Pennzoil) implicated the "important" state interest in administering the enforcement of the state judicial decrees. The state's interest in "forcing persons to transfer property in response to a court's judgment," the interest at issue in *Pennzoil*, was considered just as important as the state's interest in "forcing persons to respond to the court's process on pain of contempt," the interest at stake in *Juidice*. *Id.* Like *Juidice*, the federal defendant and state plaintiff were the same state actors. Like *Juidice* (and all other *Younger* cases), the federal plaintiff could have obtained complete relief, not by bringing a federal action but by raising its federal claim as a defense to the state prosecution. Thus, *Pennzoil* is faithful to the core *Younger* principle: abstention is mandated when a federal plaintiff can obtain his relief by raising his federal claim as a defense to the state proceeding in which he is a defendant and in which the state is seeking to enforce important public policies.

*Pennzoil* did extend the *Younger* doctrine in two respects relevant to this case. First, *Pennzoil* appears to be the first *Younger* case in which the state plaintiff is not a state official regularly in the state's employ, but is merely a "state actor" or one acting "under color of" state law within the meaning of § 1983. Nevertheless, the state plaintiff was still a state agent.

Second, *Pennzoil* involved a "collateral" attack by Texaco against Texas' bond requirements. This attack is called "collateral" because it was an attack on procedures and was independent from the claims and defenses pertaining to the underlying tort judgment Pennzoil had obtained against Texaco. Despite this "collateralness," abstention was still deemed warranted because the federal objections to the bond requirements could have been interposed as a state defense. Thus, as defendant correctly points out, this court's observation in its March 4 opinion that plaintiffs in this case are bringing a collateral attack against Illinois procedures, independent of their employment discrimination charges, no longer by itself means that *Younger* abstention is inappropriate.

■ Despite these two minor extensions of *Younger*, if they are extensions at all, the *Pennzoil* decision provides no reason for this court to overrule its previous decision not to abstain. The central feature to every *Younger* case is still not present here. The federal plaintiffs in this case are not defendants in the state action. They therefore cannot raise their federal claims by way of defense in the state proceedings. Defendant argues that the plaintiffs here are indeed parties to a state administrative proceeding in which they can obtain all the relief they are seeking here. But that pending administrative proceeding is not an action brought by a state actor against plaintiffs to enforce important state policies. It is brought by the same plaintiffs to this action—private employees who believe they have been discriminated against. True, in that state proceeding the plaintiffs argue not only that they have been discriminated against, but also that the procedures for processing their discrimination claims violate due process. That is the same claim raised here. But unlike every other *Younger* case, the relationship of the parties to this federal action is not an inversion of their relationship in the related state action. The relationship is the same. This is not a mere technical aberration. It means that the fundamental concern of *Younger* is absent here. As already explained, the basic principle of *Younger* is that a federal court should not interfere with a state's interest in enforcing its own laws when the party defending the state enforcement proceeding can obtain all the relief he desires by raising his federal claim as a state defense. But where, as here, the state is not prosecuting any of its laws, and the federal plaintiffs are not state defendants but are in fact the state plaintiffs, the *Younger* policy of non-interference with *state prosecutions* is inapplicable.

Thus, defendant's request for abstention is really based on the argument that since the plaintiffs can obtain their desired relief by raising their federal claims as state plaintiffs, this court should remit the plaintiffs to that forum. But, if this court were to abstain in this case merely because the state plaintiffs can raise their federal claims in state administrative proceedings, then the result would essentially be a requirement that a federal plaintiff exhaust his constitutional claims in a state forum before resorting to a federal forum. The Supreme Court in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), has explicitly held that such a view would be contrary to law. I explained the Court's position in my March 4 opinion. My comments bear repeating here.

> The Court in a footnote issued a reminder that abstention should not be used to force a plaintiff in effect to exhaust his administrative remedies prior to bringing a section 1983 suit since such exhaustion is not required under *Patsy v. Florida Board of Regents*, 457 U.S. 496 [102 S.Ct. 2557, 73 L.Ed.2d 172] (1982). *Dayton Christian Schools*, 106 S.Ct. at 2732 n. 2. Abstention, the Court cautioned, is not warranted when the administrative proceedings are "remedial" rather than "coercive." *See id.* This warning confirms this court's earlier observation that abstention is proper only when the federal plaintiff is in the position of defendant (a "coercive" position) in the state proceedings. Here, the federal plaintiffs are also state plaintiffs in remedial, state

# 1148

administrative proceedings. Abstention is therefore unwarranted.

Mem.Op. and Order, 3–4–87, at 12.

It should be noted that the *Dayton Christian Schools* opinion was written by Chief Justice Rehnquist, a confirmed believer in a strong abstention doctrine. Nothing in *Pennzoil* undercuts this court's just-quoted March 4 analysis, or the Supreme Court's instruction in footnote 2 of *Dayton Christian Schools.* In *Pennzoil,* Texaco—the state defendant—was in a "coercive" posture. Pennzoil was about to execute its judgment against Texaco and Texaco was seeking to resist this coercive use of judicial process. Again, in this case, the federal plaintiffs are not in a coercive position in the state proceedings. They are in fact the prosecutors, seeking to obtain affirmative remedies from the Illinois Human Rights Commission. Given footnote 2 of *Dayton Christian Schools,* there is no reason to abstain from hearing this case on *Younger* grounds.

In its final argument on its renewed motion, defendant Tucker contends that, quite apart from *Younger,* this case ought to be dismissed under the principles enunciated in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the so-called Rooker-Feldman doctrine. The basis for this argument was available to defendant ever since this case was first filed. The only reason, apparently, defendant chose to wait until now to raise this issue is that Justice Marshall (alone) found the issue to be dispositive of the Pennzoil-Texaco dispute. *See* — U.S. at —, 107 S.Ct. at 1532 (Marshall, J. concurring in the judgment). Presumably, defendant believes that the doctrine will govern this case. It does not.

The Rooker-Feldman doctrine holds that federal appellate review of judgments rendered by state courts can only occur in the Supreme Court, by appeal or by writ of certiorari. *Feldman,* 460 U.S. at 482, 103 S.Ct. at 1314–15; *Rooker,* 263 U.S. at 416, 44 S.Ct. at 150. Under this doctrine, a federal district court challenge to the correctness of a state court judgment must be dismissed for lack of subject matter jurisdiction. This doctrine applies even where the federal action seeks to challenge the procedures by which the state court rendered its judgment, so long as the constitutional claims presented to the federal court are "inextricably intertwined" with the merits of the state court judgment. *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315 n. 16. In such a case, the federal district court is in essence being called upon to review a state court judgment. "This it may not do." *Id.*

Eight Supreme Court justices found this doctrine inapplicable to the *Pennzoil* case, and this court finds it wholly out of place here as well. This lawsuit is not the successor to a state court judgment involving the same parties and same issues. Quite simply, there has been no state court judgment on the issues presented in this case. Thus, adjudication of this controversy cannot in any way be viewed an "appellate review" of the correctness of some state court judgment. In these circumstances, reliance on the Rooker-Feldman doctrine is entirely misplaced.

Accordingly, the court will not abstain from this case or dismiss it. This decision marks the third time the court has considered and rejected abstention arguments. *See, e.g.,* Mem.Op. and Order, 3–19–84 at 10–11 (rejecting *Pullman* and *Burford* abstention); Mem.Op. and Order, 3–4–87 at 8–12 (rejecting *Younger* abstention). The court trusts that the time it devoted to this opinion will not be in vain and that the parties will proceed with the merits of this three-year old case, fully cognizant that this court ought to and will decide the issues presented.

### Conclusion

Defendant's renewed motion for abstention or for dismissal is denied.

It is so ordered.