Russell Thomas **ANDERSON,** Plaintiff,

v.

**THE CHARTER TOWNSHIP OF YPSILANTI,** Defendant.

No. CIV. A. 94–70047.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 9, 1999.

Peter A. Davis, Davis & Fajen, Ann Arbor, Gerard V. Mantese, E. Powell Miller, John J. Conway, Mantese, Miller, Troy, MI, for Russell Anderson, plaintiff.

James E. Tamm, O'Connor, DeGrazia, Bloomfield Hills, MI, for Ypsilanti Township, Charter of defendant.

## ORDER OF DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO THE ROOKER–FELDMAN DOCTRINE

GADOLA, District Judge.

On June 22, 1999, plaintiff Russell Thomas Anderson filed a motion to lift the stay currently in place in the above-entitled action, as well as a motion for summary judgment. The instant case involves plaintiff's claim that defendant, The Charter Township of Ypsilanti (hereinafter "Ypsilanti Township"), engaged in an unconstitutional taking of plaintiff's property in violation of both the Michigan Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff initially filed his complaint in the Washtenaw County Circuit Court, State of Michigan, on November 5, 1988. The case eventually was removed by defendant to this Court on January 6, 1994. In an order entered March 3, 1994, this Court *remanded* plaintiff's state law claims and *stayed* any further federal court action pending adjudication of the state law claims. Plaintiff now requests that the stay of the federal court action be lifted and that summary judgment be granted in his favor. Defendant Ypsilanti submitted its response in opposition to plaintiff's motions on June 10, 1999. On July 13, 1999, plaintiff filed his reply brief.

 For the reasons stated hereinbelow, this Court holds that it lacks subject-matter jurisdiction to hear plaintiff's federal claims pursuant to the *Rooker–Feldman* doctrine. That doctrine, discussed at length *infra,* provides that "federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court *or to evaluate constitutional*

claims that are 'inextricably intertwined with the state court's [decision] in a judicial proceeding.'" *Blake v. Papadakos,* 953 F.2d 68, 71 (3d Cir.1992)(citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 1315, n. 16, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923))(emphasis added). Applying the *Rooker–Feldman* doctrine, the Court must abstain from ruling on plaintiff's motion for summary judgment.[1]

## I. FACTUAL BACKGROUND

Plaintiff's claims arise out of the refusal of the defendant, Ypsilanti Township, to rezone certain real property owned by plaintiff. The following factual background is derived in part from this Court's previous order issued March 4, 1993 remanding state law claims and staying further federal court action.

Plaintiff owns a vacant parcel of land encompassing 15.19 acres. Current zoning of the property is I–1, light industrial use. To the east of the property lies a vacant 8.15–acre parcel zoned RM–2 for multifamily residential use and a 20–acre parcel occupied by an apartment complex. Both of these parcels are owned by plaintiff. These properties are bordered on the south and southeast by a fully developed single family residential subdivision. To the north of the property is a railroad crossing. To the west is a small light industrial development.

On March 16, 1988, plaintiff applied to Ypsilanti Township for a rezoning of his 15.19–acre parcel from I–1, light industrial, to RM–1, which would permit plaintiff to use the 15.19–acre parcel in the same manner as he uses his 20–acre parcel. Plaintiff seeks the change in zoning so that he may build additional apartments.

---

1. Oral argument will not significantly aid in the disposition of the issues presented in the parties' briefs. Accordingly, pursuant to E.D.

Mich. L.R. 7.1(e)(2), the hearing previously scheduled for November 10, 1999 will be canceled.

On May 10, 1988, the Ypsilanti Planning Commission held a public meeting to consider plaintiff's rezoning request. On August 18, 1988, the Township's planner, Charles Leman, recommended that plaintiff's request be granted. Thereafter, both the Ypsilanti Planning Commission and the Washtenaw County Metropolitan Planning Commission recommended to the Township of Ypsilanti that plaintiff's request be granted. Despite these recommendations, the Ypsilanti Board of Trustees voted 4 to 3 on October 18, 1988 to deny plaintiff's request for rezoning.

Plaintiff filed a lawsuit against defendant Ypsilanti Township on November 5, 1988 in Washtenaw County Circuit Court, State of Michigan (Case No. 88–36085–CZ). On December 21, 1990, the state court granted defendant's motion for summary judgment. On July 23, 1993, the Michigan Court of Appeals reversed the trial court's decision and remanded the case for further proceedings. On December 15, 1993, plaintiff filed a second amended complaint, alleging three counts. Defendant then filed a notice of removal on January 6, 1994.

Count I of plaintiff's second amended complaint alleges an unlawful taking of his property in violation of the Fifth Amendment to the United States Constitution and in violation of the Michigan Constitution. Count II alleges an unlawful exercise of police power in violation of the Fourteenth Amendment to the United States Constitution and in violation of the Michigan Constitution. Count III alleges a violation of 42 U.S.C. § 1983.

In an order filed March 3, 1994, this Court refused to exercise pendent jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367. This Court remanded plaintiff's state law claims and stayed further proceedings in the federal court action pending disposition of plaintiff's state court case.

After the partial remand, a bench trial was held in the state court, the Honorable Kurtis T. Wilder, presiding. The trial concluded in December of 1994. Although the parties had submitted proposed findings of fact and conclusions of law in December of 1994, a decision was not forthcoming from the state court until May 7, 1998.[2]

In April of 1998, plaintiff filed a complaint for superintending control in the Michigan Court of Appeals, seeking a decision from Judge Wilder. On May 7, 1998, as mentioned above, Judge Wilder issued an opinion and order finding that plaintiff had failed to prove his claims by a preponderance of the evidence and ruling in favor of defendant Ypsilanti Township.

Plaintiff now complains that the May 7, 1998 opinion and order was untimely filed and the decision unfair. Specifically, plaintiff asserts that Judge Wilder's opinion was issued in retaliation for plaintiff's filing his complaint for superintending control. *See* plaintiff's brief in support of motion to lift stay and for summary judgment, p. 6.

## II. ANALYSIS

■ As a threshold issue, this Court must first determine whether it has subject-matter jurisdiction over the claims presented by plaintiff. It is well-settled that subject-matter jurisdiction is an issue which must be raised *sua sponte* by a federal court where appropriate and can be raised at any time. *See Mickler v. Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 189 (6th Cir.1993), *cert. denied*, 511 U.S. 1084, 114 S.Ct. 1835, 128 L.Ed.2d 463 (1994). For the reasons stated below,

---

**2.** Judge Wilder communicated with the parties on two occasions. On September 22, 1995, the judge wrote to counsel explaining that a personal matter relating to his wife's pregnancy had delayed the opinion and that he intended to issue the opinion by October 31, 1995. *See* Exh. 16 to plaintiff's brief in support of motion to lift stay and for summary judgment. On January 29, 1996, Judge Wilder issued a notice of intent to issue a decision on or before March 31, 1996. *See* Exh. 17 to plaintiff's brief. Despite these indications, the opinion and order was not entered until May of 1998.

the Court concludes that subject-matter jurisdiction is lacking in the case at bar.

Plaintiff seeks a ruling from this Court that the state court's three and one-half years of delay in issuing the opinion and order denied plaintiff his Fourteenth Amendment right to a fair hearing. *See* plaintiff's brief, p. 9. Plaintiff further asserts that the trial court's actions were a "travesty" prompting the need for immediate federal relief. Plaintiff attempts to analogize the instant case to *Green v. Ameritech Corp.*, 12 F.Supp.2d 662 (E.D.Mich.1998)(Gadola, J.), a case wherein this Court held that an arbitrator had exceeded his authority by issuing a conclusory opinion in violation of the parties' arbitration agreement. *Id.* at 665.

In response, defendant argues that plaintiff is, in effect, seeking appellate review of a state court decision. Such appellate review by a federal court is prohibited by the *Rooker–Feldman* doctrine. *See* defendant's brief in response, pp. 19–20. Moreover, with respect to plaintiff's claim that his procedural due process rights were violated by the state court's delay in issuing its May 7, 1998 opinion, defendant cites *Bigelow v. Michigan Dep't of Natural Resources*, 970 F.2d 154 (6th Cir.1992), for the proposition that a plaintiff's procedural due process claims were not ripe where they were ancillary to the main issues involved in the case. *See id.* at 159 (citing *Harris v. Riverside County*, 904 F.2d 497, 500 (9th Cir.1990)) (" '[p]rocedural due process claims arising from an alleged taking may be subject to the same ripeness requirements as the taking claim itself depending on the circumstances of the case' ").

In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the plaintiff brought suit in a federal district court seeking review of a state court judgment. Plaintiff claimed that an Indiana state statute violated the contract clause of the United States Constitution, Article 1, § 10, cl. 1, as well as due process and equal protection. *Id.* at 414, 44 S.Ct. 149. The United States Supreme Court in *Rooker* affirmed the district court's dismissal of the action for lack of subject-matter jurisdiction, stating that

no court of the United States other than this court [i.e., the United States Supreme Court] could entertain a proceeding to reverse or modify the judgment [of a state court] for errors. . . . To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original.

*Id.* at 416, 44 S.Ct. 149.

More recently, in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), plaintiff was denied the right to sit for the District of Columbia bar examination because he had not graduated from an approved law school. After the District of Columbia Court of Appeals denied plaintiff's petition for admission, plaintiff brought an action in federal district court alleging that he had a right to take the examination pursuant to the Fifth Amendment. The Supreme Court held that a "United States District Court is without authority to review final determinations of the District of Columbia Court of Appeals in judicial proceedings." *Id.* at 476, 103 S.Ct. 1303. "Review of such determinations can be obtained only in [the United States Supreme Court]." *Id.* The Court further commented as follows: "[i]f the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's [state law claims], then the District Court is in essence being called upon to review the state court decision. This the District Court may not do." *Id.* at 483, n. 16, 103 S.Ct. 1303.

Subsequent to the two decisions discussed above, courts expressly recognized the so-called *Rooker–Feldman* doctrine prohibiting appellate review of state court judgments by federal district courts. *See, e.g., Blake v. Papadakos*, 953 F.2d 68 (3d

Cir.1992); *Strauss v. Drew,* 739 F.Supp. 1231 (N.D.Ill.1990); *Lemon v. Tucker,* 664 F.Supp. 1143 (N.D.Ill.1987). In *Lemon,* the doctrine was articulated as follows:

> The *Rooker–Feldman* doctrine holds that federal appellate review of judgments rendered by state courts can only occur in the Supreme Court, by appeal or by writ of certiorari. *Feldman,* 460 U.S. at 482, 103 S.Ct. at 1314–15; *Rooker,* 263 U.S. at 416, 44 S.Ct. at 150. Under this doctrine, a federal district court challenge to the correctness of a state court judgment must be dismissed for lack of subject matter jurisdiction. This doctrine applies even where the federal action seeks to challenge the procedures by which the state court rendered its judgment, so long as the constitutional claims presented to the federal court are "inextricably intertwined" with the merits of the state court judgment. *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315 n. 16. In such a case, the federal district court is in essence being called upon to review a state court judgment. "This it may not do." *Id.*

*Lemon,* 664 at 1148.

After duly reviewing the pleadings of the parties in the case at bar, as well as the applicable law discussed above, this Court finds that it is without jurisdiction to entertain plaintiff's claims. In essence, plaintiff is seeking reversal of the May 7, 1998 opinion and order issued by the state court. Plaintiff's motion for summary judgment effectively asks this Court to adjudicate issues which are *inextricably intertwined* with those issues already decided upon by the state court. Specifically, if this Court were to find a violation of substantive due process, it would necessarily be required to find, contrary to Judge Wilder, that defendant Ypsilanti Township acted arbitrarily, capriciously, and in derogation of its authority. In addition, a finding by this Court that plaintiff's property lacked any economic viability due to the rezoning denial would be directly contrary to Judge Wilder's finding that the property had value as zoned.

The *Rooker–Feldman* doctrine prevents a federal district court from ruling on issues which are "inextricably intertwined" with claims decided in state court proceedings. *Keene Corp. v. Cass,* 908 F.2d 293, 296 (8th Cir.1990). It is well-established that "[u]nder the *Feldman* doctrine, [a] federal claim is inextricably intertwined with the state-court judgment *if* the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id.* at 296–97 (emphasis added). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id.* (quoting *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987)(Marshall, J., concurring)). Since plaintiff's federal claims depend on factual issues inextricably intertwined with the state court's determination, this Court is prohibited from exercising its jurisdiction.

As an additional point, plaintiff's reliance on this Court's prior decision in *Green v. Ameritech Corp.,* 12 F.Supp.2d 662 (E.D.Mich.1998) is wholly misplaced. In *Green,* plaintiff appealed an arbitration opinion. According to the parties' arbitration agreement, the arbitrator was to issue a decision within twenty-one days following the submission of briefs. *Id.* at 663. A decision was not issued for more than one year. Despite the delay, this Court nevertheless found "the untimeliness objection unavailing because plaintiff ha[d] not demonstrated any prejudice from the arbitrator's late filing of his decision." Id. at 665. Instead, this Court vacated the arbitration award due to the arbitrator's failure to issue an opinion adequately explaining the arbitrator's decision with respect to each theory advanced by each plaintiff. *Id.*

*Green* is readily distinguishable from the case at bar. First, the instant case in-

volves a state court's determination of crucial factual issues also before this Court, and *not* the propriety of an arbitrator's decision. Jurisdiction to decide an appeal of an arbitrator's decision was not in question. *See* Section 10(a) of the Federal Arbitration Act, 9 U.S.C. § 10(a). Second, as just discussed, this Court's ruling in *Green* was *not* premised upon the untimeliness of the arbitrator's decision, but rather upon its conclusory nature.

At the end of its reply brief, plaintiff cites several cases in an attempt to show that the instant case is *not* barred by the *Rooker–Feldman* doctrine. *See Catz v. Chalker*, 142 F.3d 279, 294 (6th Cir.1998); *Gash Assocs. v. Village of Rosemont*, 1991 WL 111148 (N.D.Ill.1991); *Acierno v. New Castle County*, 1996 WL 190005 (D.Del. 1996); *Marks v. Stinson*, 19 F.3d 873 (3d Cir.1994); *England v. La. State Bd. of Medical*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); and *Bradley v. Pittsburgh Bd. of Ed.*, 913 F.2d 1064, 1071 (3d Cir.1990). Unfortunately, none of these cases is controlling over the particular circumstances found in the case at bar.

In *Catz v. Chalker, supra*, for example, plaintiff brought a civil rights action against his former wife and her attorneys, alleging that *procedures* in a state divorce trial violated his due process rights. The Sixth Circuit found that "the district court erred in holding that [plaintiff's] lawsuit…[was] inextricably intertwined with the Arizona divorce judgment." *Id.* at 293. The appellate court reasoned that "federal relief [in *Catz* ]…need not be 'predicated upon a conviction that the state court was wrong' on the merits." *Id.* at 294. By contrast, in the case at bar, a ruling in favor of plaintiff by this Court *would require* the conclusion that the state court was wrong *on the merits*.

' Similarly, in *Gash Assocs. v. Village of Rosemont, supra*, in an unpublished opinion, the federal district court found defendant's claim of lack of subject-matter jurisdiction to be without merit. Plaintiff brought a due process "taking" claim in federal court following a state court proceeding. The *Gash* court noted that "[the] issue litigated and decided in state court was the propriety of a judicial foreclosure sale and sale confirmation." *Id.*, 1991 WL 111148, *4. The claim brought in the federal court was "a constitutional claim for just compensation." *Id.* The federal court rejected defendant's assertion that the two proceedings were "inextricably intertwined" so as to implicate the *Rooker–Feldman* doctrine. In contrast to the instant case, the prior state proceeding herein did not merely involve a determination of the propriety of a judicial foreclosure sale and sale confirmation. Instead, as discussed, the state proceeding in the present case involved identical factual issues as are found in the federal case.

In *Acierno v. New Castle County, supra*, another unpublished decision, plaintiff brought an action in *federal* court seeking injunctive relief relating to defendant-county's continuing conduct in denying him a building permit. *Id.*, 1996 WL 190005, *1. Thereafter, the defendant filed a complaint in the Court of Chancery of the State of Delaware seeking a declaration that plaintiff "does not have a right to proceed with commercial development plans" on the property in question. *Id.* In finding that the *Rooker–Feldman* doctrine did *not* bar plaintiff's federal claims, the court emphasized the fact that the state court in that case "contain[ed] no substantive holding" and "did not review the merits of the administrative agency's decision." *Id.* at *5. It is apparent that plaintiff cannot utilize *Acierno* to resist application of the *Rooker–Feldman* doctrine due to the fact that Judge Wilder's opinion and order *was* substantive and *did* review the merits of the Ypsilanti Board's decision.

Plaintiff next cites *Marks v. Stinson, supra*, wherein a losing state senate candidate, among others, brought an action against the winning candidate, the candidate's campaign, and the Board of Elections, alleging violations of the Voting Rights Act and Civil Rights Act in connec-

tion with an election. In rejecting application of the *Rooker–Feldman* doctrine, the Third Circuit held that "the [district] court was not barred under *Rooker–Feldman* from hearing the constitutional and fraud claims of [plaintiffs] because [their] claims had not been determined by the state court, nor were they inextricably intertwined with a prior state court decision." *Id.* at 885, n. 11. *Marks* is clearly distinguishable from the present case where the issues to be adjudicated *are* "inextricably intertwined" with the prior state court findings.

Nor are the last two cases cited helpful to plaintiff's position. In *England v. La. State Bd. of Medical, supra,* the court did not even deal with the *Rooker–Feldman* doctrine, but rather principles of abstention generally. In *England,* the court held that because plaintiffs were under a mistaken view that they were "required to litigate their federal claims in state courts," plaintiffs' claims should not have been dismissed by the federal court under the abstention doctrine. *Id.* at 422, 84 S.Ct. 461. Likewise, in *Bradley v. Pittsburgh Bd. of Ed., supra,* the court also did not consider the *Rooker–Feldman* doctrine. Instead, the court considered the preclusive effects of prior state proceedings where a teacher had brought a § 1983 action in federal court prior to termination. *See id.* at 1070.

In light of the foregoing, this Court holds that it lacks subject-matter jurisdiction to hear plaintiff's federal claims pursuant to the *Rooker–Feldman* doctrine. As discussed, plaintiff's motion for summary judgment effectively asks this Court to adjudicate issues *inextricably intertwined* with issues *already determined* by the state court. Plaintiff has come forward with no persuasive authority to demonstrate that the *Rooker–Feldman* doctrine is not applicable herein. Accordingly, the Court will dismiss the instant federal action for lack of subject-matter jurisdiction.

NOW, THEREFORE, IT IS HEREBY **ORDERED** that the above-entitled action be **DISMISSED** for lack of subject-matter jurisdiction for the reasons as set forth in the above opinion;

**IT IS HEREBY ORDERED** that the hearing previously scheduled for November 10, 1999 is **CANCELED**.

**SO ORDERED.**