NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0916n.06
Filed:  November 18, 2005

No. 03-4097

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MATTIE A. JOHNSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| OHIO SUPREME COURT, et al., | ) | THE  SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendants-Appellees | ) | |

Before:  MOORE, GIBBONS, and GRIFFIN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.  Mattie A. Johnson sued the Ohio Court of

Appeals, Eighth Appellate District, and the Ohio Supreme Court under 42 U.S.C. § 1983, charging

that the state courts violated her rights to due process and equal protection of the laws during the

litigation of an employment dispute. Johnson also sued three judges from the Eighth Appellate

District and the Justices on the Ohio Supreme Court in their official capacities, alleging the same

constitutional violations. The United States District Court for the Southern District of Ohio

dismissed Johnson's § 1983 action, holding that the *Rooker-Feldman* doctrine deprived it of subject

matter jurisdiction.  Johnson timely appealed the dismissal to this Court. We affirm the district

court's decision.

I.

-1-

Mattie A. Johnson was employed by MetroHealth Medical Center—a political subdivision of Ohio—until April 5, 1996, when she was terminated for violating an employee attendance policy. After her firing, Johnson's public sector union initiated the grievance process provided for by the collective bargaining agreement between MetroHealth Medical Center and the union. The grievance was submitted to arbitration. The arbitrator found that Johnson had been wrongfully terminated by her employer and ordered Johnson reinstated to a position similar to her former job, but Johnson was denied lost wages for the period between her termination and reinstatement.

Johnson believed the collective bargaining agreement mandated that she receive lost wages so she appealed the arbitrator's refusal to award her back pay to the Cuyahoga County Court of Common Pleas. Although an Ohio statute provides for appellate review of arbitrations in state court, the Court of Common Pleas dismissed Johnson's action. The court held that Johnson lacked standing to challenge the outcome of the arbitration because she was not formally a party to it: the arbitration was between MetroHealth Medical Center and Johnson's union, even though the union was acting on Johnson's behalf. Johnson appealed this ruling to the Court of Appeals of Ohio, and the Eighth Appellate District affirmed because "[its] opinions have consistently articulated that generally, an individual employee lacks standing to appeal from binding arbitration where the employee's union and the employer are the sole parties." *Johnson v. Metro Health Med. Ctr.*, No. 79403, 2001 WL 1685585, at *1 (Ohio App. 8 Dist. Dec. 20, 2001). To bolster its conclusion, the Eighth Appellate District "recognize[d] a distinction between a party in interest and an interested party." *Id.* at *2. Judge Patricia Ann Blackmon, writing for the panel, explained:

> Clearly Johnson remained interested in the arbitration decision; however, when she asked

> for the union's help, she called upon the collective power of her fellow members, and ceased to stand alone. The necessary and just price paid by Johnson was subordination of her individual rights to those of her fellow union members.

*Id.* This holding was in accord with other decisions by the Eighth Appellate District that had denied employees standing to appeal decisions from arbitrations undertaken by their unions. *See, e.g., Coleman v. Cleveland Sch. Dist.*, 756 N.E.2d 759 (Ohio Ct. App. 2001) (denying employee standing to challenge arbitration between the union and the employer).

The denial of standing, however, conflicted with an older Tenth Appellate District decision that granted employees standing to challenge outcomes of arbitrations between their unions and employers. *See Barksdale v. Oh. Dept. of Admin. Servs.*, 604 N.E.2d 798, 800 (Ohio Ct. App. 1992) (finding that employee had standing to challenge an arbitration because the employee was the real party in interest to the arbitration). The Eighth Appellate District acknowledged the conflict between appellate districts in a decision that antedated Johnson's case but declined to follow the Tenth Appellate District on policy grounds—namely to protect "the collective-bargaining process." *Coleman,* 756 N.E. 2d at 762.

The Eighth Appellate District's refusal to follow the Tenth Appellate District, Johnson contends, caused similarly situated employees to have standing to appeal arbitration decisions in one Ohio appellate district and not in another. Johnson seized upon the nonuniformity after she was denied standing, invoking Article 4, section 3(b)(4) of the Ohio Constitution, which permits the Ohio Courts of Appeals to certify to the state supreme court issues on which the appellate districts disagree. She asked the Eighth Appellate District to certify her case to the Ohio Supreme Court for review and final determination because its ruling in her case conflicted with the prior decision of the

Tenth Appellate District. The Eighth Appellate District refused, without comment, to certify a conflict. Thereafter, Johnson sought discretionary review in the Ohio Supreme Court, asking it to reconsider both the Eighth Appellate District's refusal to certify a conflict and its ruling that she lacked standing. Johnson's request for discretionary review was denied by the Ohio Supreme Court.

Unable to obtain review of her case or certification of a conflict, Johnson filed this § 1983 action against the Eighth Appellate District, the Ohio Supreme Court, and their respective judges in United States District Court for the Southern District of Ohio. In response to Johnson's suit, the Court of Appeals and Supreme Court defendants filed motions to dismiss. All defendants moved to dismiss the suit for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. They argued that the *Rooker-Feldman* doctrine divested the federal district court of its jurisdiction over Johnson's case. The Ohio Supreme Court and its Justices also moved to dismiss Johnson's claim for lack of personal jurisdiction. The district court ultimately dismissed Johnson's § 1983 action for lack of subject matter jurisdiction, holding that the *Rooker-Feldman* doctrine deprived it of jurisdiction. After the district court entered its final judgment, Johnson appealed to the Sixth Circuit.

II.

This court reviews *de novo* a determination by a federal district court that the *Rooker-Feldman* doctrine deprives it of subject matter jurisdiction. *Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 492 (6th Cir. 2001). The federal district courts possess broad subject matter jurisdiction; ordinarily, they are empowered to adjudicate cases concurrently with the state courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, __ U.S. __, 125 S.Ct. 1517, 1521 (2005)

(acknowledging that the federal courts generally have concurrent jurisdiction with the state courts). "The jurisdiction possessed by the District Courts is strictly original[,]" however. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). With the exception of their power to issue writs of habeas corpus, they are without power to review decisions rendered by state courts. *See Exxon Mobil*, 125 S.Ct. at 1521 ("[A]ppellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court."). Federal jurisdiction over appeals from state courts is vested exclusively in the United States Supreme Court by 28 U.S.C. § 1257.

The *Rooker-Feldman* doctrine maintains the jurisdictional distribution in the federal courts by insuring that the federal district courts exercise only original jurisdiction. *See generally Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983) (establishing a jurisdictional doctrine to prevent federal district courts from exercising appellate jurisdiction); *Rooker*, 263 U.S. at 413 (same). The doctrine divests federal district courts of subject matter jurisdiction in cases where they are called upon to review state court judgments. *See Exxon Mobil*, 125 S.Ct. at 1521. In other words, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state court judgments." *Hoblock v. Albany Cty. Bd. of Elections*, __ F.3d __, 2005 WL 2108689, at *3 (2d Cir. 2005); *see also Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293 (6th Cir. 2005) (explaining that federal district courts lack jurisdiction over challenges to state court decisions).

In addition to divesting federal district courts of jurisdiction over appeals from state court judgments, the *Rooker-Feldman* doctrine also deprives federal district courts of jurisdiction over federal claims that are "inextricably intertwined" with state court judgments. *Feldman*, 460 U.S. at 486–87. The inextricably intertwined facet of the *Rooker-Feldman* doctrine can deprive a federal

district court of jurisdiction over a federal claim that has not even been litigated in state court "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J. concurring). As a result, "a district court [cannot] entertain constitutional claims attacking a state-court judgment" if "the constitutional attack [is] 'inextricably intertwined' with the state court's judgment." *Exxon Mobil*, 125 S.Ct. at 1523 n.1.

The inextricably intertwined facet of the *Rooker-Feldman* doctrine permits broad application of the doctrine with the potential to override federal district court jurisdiction in any case preceded by state court litigation. *Hoblock*, 2005 WL 408689, at *4 (noting that the "inextricably intertwined" language in *Feldman* caused "[l]ower federal courts [to struggle] to define *Rooker-Feldman's* reach"). As a result, "the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal court jurisdiction concurrent with the jurisdiction exercised by state courts, and superceding the ordinary application of preclusion law . . . ." *Exxon Mobil*, 125 S.Ct. at 1521 (noting that, at its proper contours, the doctrine merely divests subject matter jurisdiction over federal actions that are in substance appeals from state court judgments and does not subsume principles of abstention and claim preclusion).

In response to the broad construction of the doctrine by the lower federal courts, the Supreme Court clarified the reach of the *Rooker-Feldman* doctrine in *Exxon Mobil*. 125 S.Ct. at 1521–22. Because the lower federal courts had "misperceived the narrow ground occupied by Rooker-Feldman[,]" the Supreme Court held that the doctrine "is confined to cases of the kind from which [it] acquired its name: cases brought by state-court losers complaining of injuries caused by state-

court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. Scaled back to its core, the *Rooker-Feldman* doctrine divests federal district courts of jurisdiction only in cases where the prior state court proceedings were "judicial in nature," as opposed to legislative or ministerial, *Feldman*, 462 U.S. at 476, and where the federal claims ""require review of a judicial decision in a particular case.'" *Exxon Mobil*, 125 S.Ct. at 1523 (quoting *Feldman*, 460 U.S. at 487). Accordingly, the federal district courts lack jurisdiction over two types of cases originating in state court: (1) cases where appellate remedies have been exhausted in state court and issues raised and decided in the state courts are presented to the federal district courts for reconsideration; and (2) cases where the federal claims asserted turn so directly on state court judgments that the federal district courts must review the state court judgments to resolve the federal claims. *See Exxon Mobil*, 125 S.Ct. at 1522–24; *Washington v. Wilmore*, 407 F.3d 274, 279–80 (4th Cir. 2005) (interpreting the *Rooker-Feldman* doctrine shortly after *Exxon Mobil*).

Johnson's § 1983 claim falls in the second category of cases: to adjudicate her constitutional claims, the federal district court would have to review judgments by the Ohio state courts. The Ohio state court judgments—the Eighth Appellate District's decision not to certify a conflict and the Ohio Supreme Court's decision to deny discretionary review—are the sources of Johnson's alleged constitutional injury. The essence of Johnson's § 1983 action is an allegation that the Ohio state courts violated her constitutional rights by reaching decisions that were unfavorable to her. To remedy her constitutional violations, Johnson asks the federal district court to declare the state court judgments unconstitutional and to enjoin the Ohio state courts from denying her motion to certify

and writ of certiorari. To pass upon Johnson's allegation and consider the appropriateness of the relief she requests, the federal district court would have to evaluate the state court judgments to determine if they violated Johnson's constitutional rights. The federal district court can never "review . . . a judicial decision in a particular case[,]" *Feldman*, 460 U.S. at 487, even if the "state-court judgment [allegedly] was rendered in contravention of the Constitution." *Exxon Mobil*, 125 S.Ct. at 1522. Only the United States Supreme Court has the jurisdiction to determine if a state court judgment violates an individual's constitutional rights. *Id.* at 1521. Because Johnson's § 1983 claim would require the federal district court to engage in prohibited appellate review, the *Rooker-Feldman* doctrine divests it of jurisdiction over the claim.

To escape the effect of the *Rooker-Feldman* doctrine, Johnson argues that it does not apply to her case because the state court judgments were "not adjudicative." This argument depends on the language in *Feldman* that limits the doctrine's reach to state court actions that are "judicial in nature." 460 U.S. at 476. Only state court actions involving a "'judicial inquiry' in which the court was called upon to investigate, declare, and enforce 'liabilities as they [stood] on present or past facts and under laws supposed already to exist'" are unreviewable by federal district courts. *Id.* at 479 (quoting *Prentis v. Atl. Coast Line*, 211 U.S. 210, 226 (1908)). The *Rooker-Feldman* doctrine does not divest the federal district courts of jurisdiction over suits seeking review of administrative, ministerial, or legislative actions taken by state courts. *Id.* at 476–77. Accordingly, Johnson tries to classify the actions taken by the Ohio state courts as non-adjudicative.

This attempted classification fails. In considering Johnson's request for a certificate of conflict, the Eighth Appellate District had to evaluate existing case law and determine whether it

conflicted with the decision reached in Johnson's case. *See Whitelock v. Gilbane Bldg. Co.*, 613 N.E.2d 1032, 1034 (Ohio Ct. App. 1993) (explaining the procedure for certifying a conflict). Likewise, the Ohio Supreme Court had to consider whether the Eighth Appellate District erred in Johnson's case and in denying the request for a certificate of conflict. Additionally, the Ohio Supreme Court had to determine whether sufficient public or legal interest in the case warranted discretionary review. Moreover, both the Eighth Appellate District and the Ohio Supreme Court had to consider the legal arguments presented by Johnson in support of her motions. Considering legal arguments in light of existing law and present facts constitutes a judicial inquiry. *Feldman*, 460 U.S. at 479. Therefore, the state court actions that Johnson challenges are judicial in nature, and the *Rooker-Feldman* doctrine operates to divest the federal district court of jurisdiction over her case.

III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.