**Frank VANWULFEN, Plaintiff,**

v.

**MONTMORENCY COUNTY and James Zavislak, Montmorency County Drain Commissioner, Defendants.**

**No. 04–10098–BC.**

United States District Court, E.D. Michigan, Southern Division.

Nov. 10, 2004.

---

Geoffrey N. Fieger, Joseph C. Bird, Fieger, Fieger, (Southfield), Southfield, MI, for Plaintiff.

David K. Otis, Plunkett & Cooney (Lansing), Lansing, MI, for Defendant.

*OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OF FOR SUMMARY JUDGMENT*

LAWSON, District Judge.

The plaintiff, Frank VanWulfen, owns property on the shore of an inland lake located in Montmorency County, Michigan. The water level of the lake can be adjusted by changing the flow of water through a dam at the lake's East end. The water level is regulated by the county drain commissioner in accordance with procedures set forth in Michigan's Inland Lake Levels Act, Mich. Comp. Laws § 324.30701 *et seq.* The plaintiff has filed a complaint in this Court alleging that the County has allowed

the lake level to rise too high, resulting in damage to the land and building on his lakefront property and effectuating a regulatory taking for which compensation is due under the Fifth Amendment to the United States Constitution. The defendants have moved for summary judgment contending that the plaintiff's claim is not ripe because the plaintiff has not fully pursued an inverse condemnation claim in Michigan State court, the action is barred by the *Rooker–Feldman* doctrine, and State court decisions involving the establishment of the lake level result in claim and issue preclusion. The plaintiff has filed a response in opposition to the defendants' motion, and the Court heard the parties' arguments in open court on November 4, 2004. The Court finds that doctrines of claim and issue preclusion are inapplicable because no final judgment on the merits has issued in a State court adjudicative proceeding; the *Rooker–Feldman* is inapplicable because even if the state court conclusively had determined the plaintiff's inverse condemnation claim, a federal court still could adjudicate the plaintiff's takings claim; however, the plaintiff has failed to fully pursue an inverse condemnation claim in State court and the matter thus is not ripe for review here. The Court, therefore, will grant the motion for summary judgment and dismiss the matter without prejudice.

### I.

This case arises from a dispute over water levels in Avery Lake; the facts are not in serious dispute for the purpose of the present motion. In its natural form, Avery Lake began as three separate lakes. In the 1930s and 1940s, logging operations and lake front property owners dammed the separate lakes and ultimately raised a makeshift dam to form a single lake. In the latter part of that period, a cement damn was built to replace the makeshift dam, and several cottages were constructed along the lake's North shore. A structure known to the local residents as the "pavilion" was built in 1948, and its proximity to the lake's artificial beach made it an ideal place for cottage dwellers and vacationers to gather. The pavilion originally was constructed of brick and mortar pilings atop footings sunk approximately forty-eight inches below ground level.

In 1965, the pavilion was converted into a year-round house; the bathroom was remodeled and a bedroom was added. That same year, the VanWulfen family bought the converted house. At the time, a large beach extended from their home to the lake shore. The water level of Avery Lake was controlled seasonally by adding or removing boards to a privately constructed dam at the East end of the lake. In 1969, this damn burst and a significant portion of beachfront was lost including the area in front of the VanWulfens' home. Montmorency County officials erected a new damn and the county's drain commission maintained it.

The lake level itself later was established in accordance with a statutory procedure. The Inland Lake Levels Act, Mich. Comp. Laws § 324.30701 *et seq.*, was enacted in 1961 to establish and maintain Michigan's inland lake levels in order to prevent flooding and flood damage. *See* Mich. Op. Atty. Gen.1966, No. 4465. Under the Act, a county board of commissioners, of its own accord or when requested by two-thirds of the lake-front property owners, or the State department of natural resources of its own accord, is authorized to initiate a proceeding in a county court to establish the "normal level" of an inland lake. *See* Mich. Comp. Laws § 324.30702, 324.30706. The "normal level" is defined as "the level or levels of the water of an inland lake that provide the most benefit to the public; that best protect the public

health, safety, and welfare; that best preserve the natural resources of the state; and that best preserve and protect the value of property around the lake." Mich. Comp. Laws § 324.30701(h). The county board may order a preliminary engineering study and gather information before filing a petition in court. Mich. Comp. Laws § 324.30703. Once the petition is filed, notice of the proceedings is given to interested parties including abutting property owners and the department of natural resources. Mich. Comp. Laws § 324.30707(1). The court then conducts a hearing and considers a variety of factors and evidence, including the testimony of interested persons, and then "determine[s] the normal level to be established and maintained." Mich. Comp. Laws § 324.30707(4), (5).

In 1970, after the Avery Lake dam collapsed, the Montmorency County circuit court entered an order on the county prosecutor's petition establishing seasonal water levels of Avery Lake at 891.3 feet above mean sea level (MSL) during the summer months and 890.3 feet above MSL during the winter months. Thereafter, the county drain commissioner controlled the water level of Avery Lake in accordance with the statute. Avery Lake apparently remained at the 1970 levels until 1982.

The VanWulfens remodeled their home in 1971 and 1972 by adding two bedrooms, a fireplace, and a seawall. The seawall protected the home from increased water levels. Brick and mortar piers were erected to support these additions. In 1982, the Montmorency County prosecutor filed a motion to reduce the level of the lake, which was supported by a position paper submitted by the State department of natural resources (DNR). The DNR stated that a lower lake level would improve habitat for fish and other wildlife. The court set a new "normal level" for the winter

months for Avery Lake at 888.8 feet above MSL. Resident fisherman experienced an increase in the amount fish in Avery Lake. The lake level remained unchanged until 1996.

In 1996, the county prosecutor filed another petition pursuant to the Act, apparently at the urging of several but not all of the abutting landowners, alleging that the DNR believed ceasing the seasonal drawdown would benefit the environment and area wildlife. The petition sought a year-round lake level of 891.3 feet above MSL, which meant that the winter draw-down would cease and the lake level would remain constant throughout the year. The VanWulfens objected to the petition and argued that stopping the winter draw-down would cause significant damage to their home. On March 5, 1997, the circuit court granted the petition in part and established a year-round normal level of 890.3 feet above MSL. As part of the order, the court directed the county drain commissioner to monitor the water level and determine whether abutting properties were damaged as a result of the new water level. In 1998, the lake level was ordered raised to 891.88 feet without hearing.

In 2001, Anna VanWulfen, the plaintiff's predecessor in title, filed a petition to redetermine the normal level of Avery Lake. It is not clear how the State court acted on that petition since the statutory scheme does not allow for a single property to file such a petition or grant a private right of action. Nonetheless, on June 5, 2001, the Montmorency County circuit court conducted a new evidentiary hearing to determine the normal level for Avery Lake pursuant the Act. During that hearing, Ms. VanWulfen presented expert testimony that the water level caused damage to her property. The essence of the testimony was that since the water level was fixed in

1996, the level of the ground water on the property rose. The increase in ground water, in turn, submersed the brick-and-mortar footings, which caused the footings to sink into the ground at an uneven rate. Seasonal freezes and thaws created further damage, and ice pressure apparently caused the retaining wall to deteriorate. As a result, the home became unable to sustain the seasonal snow load.

On October 17, 2001, the county court filed an opinion setting the water level at the 1970-through-1982 level, that is, 890.3 feet above MSL during the winter months and 891.3 feet during the summer months. The court concluded that the lake level that existed during that period "caused no structural damage, earth mounding or any other problems disclosed on the record for this case," and there was no scientific evidence "which convinces this Court that the seasonal lowering of the water level to a reasonable level would be harmful to the fisheries and wildlife habitats." Opinion, Def's Mot. S.J. Ex. 2 at 20. The court also rejected the plaintiff's expert testimony because it was "lacking in solid foundation" since the experts apparently did not know that the VanWulfen home previously had been a pavilion before it was remodeled; the experts did not realize that there is no foundation under at least three walls of the home; the experts did not know that lake level was not lowered to 888.8 feet until 1982 and assumed that the winter level of 890.3 began in 1997 when in fact that was the level established in 1970 and continued to 1982 without problem; neither expert visited the home and knew nothing of the soil underneath the home and whether it was conducive to supporting a home; the experts developed no facts through testing that would support the freeze-and-thaw theory of damage; and the experts did not explain how since only 1997 the water level had caused settling of the home's foundation. *Id.* at 18–20. On February 24, 2002,

the court filed a supplemental opinion and order specifying that national geodetic vertical datum should be used as the reference when setting the water level. Although that reference is required by the statute, *see* Mich. Comp. Laws § 324.30701(h), apparently no one, including the drain commissioner, had used that reference in their measurements.

On April 12, 2002, the plaintiff filed a three-count complaint against Montmorency County and its drain commissioner, James Zavislak, in the Michigan court of claims for damages to his property abutting Avery Lake alleging inverse condemnation as a result of the increase in ground water (count I); trespass and nuisance as a result of the increased water level of Avery Lake (count II); and gross negligence for failure to control and measure the water level of the lake (count III). The plaintiff contended that the action by the county in raising the level of Avery Lake caused damage to his house and that a mound of earth had developed between his house and the lake that constituted property damage as well. The parties stipulated to transfer venue to the Montmorency County circuit court where the defendants moved for summary judgment in that court.

On August 15, 2003, the county court issued an opinion granting in part and denying in part the defendants' motion. The court dismissed the plaintiff's gross negligence claim for lack of evidence. The court allowed a portion of the inverse condemnation claim to proceed but severely limited the question to whether the mounding on the property was caused by the county's adjustment of the lake level. The court did not permit the plaintiff to seek damages for the house structure itself, reasoning that the issue of causation of the damage to the residence had been determined in the prior lake-level proceed-

ing and therefore that part of the claim was barred by the doctrine of collateral estoppel, or claim preclusion. The plaintiff did not appeal that ruling, but rather elected to discontinue the lawsuit. On March 15, 2004, the State court entered an order dismissing the case without prejudice based on the stipulation of the parties.

The plaintiff has now filed a three-count amended complaint in this Court alleging that the actions of Montmorency County and its drain commissioner in regulating the water level of Avery Lake caused damage to the land and structures on his abutting property. He seeks damages under 42 U.S.C. § 1983 because the defendants violated the Takings Clause of the Fifth Amendment (count I), and he repeats the inverse condemnation (count II) and gross negligence (count III) claims that he brought in State court. On August 12, 2004, the defendants filed a motion for summary judgment. They contend that the plaintiff may not proceed with his claims in federal court because his taking claim is not ripe since the plaintiff has not fully pursued an inverse condemnation claim in Michigan state court. The defendants further assert that this Court may not adjudicate the plaintiff's claim under the *Rooker–Feldman* doctrine because the plaintiff is seeking in essence a federal court review of the State court's decision on that part of the claim that alleges damages to the house. Finally, the defendants argue that the plaintiff's claims are barred by the doctrines of claim and issue preclusion based on the prior State court actions.

## II.

The defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and (6), and in the alternative they seek summary judgment. Although the defendants have raised a challenge to the jurisdictional facts on the question of the ripeness of the plaintiff's takings claim, it is quite clear from the parties' submissions that the Court cannot adjudicate the motion without referring to matters outside the pleadings. Consequently, the defendants' request for relief under Rule 12 must be rejected and the Court must proceed under Rule 56. *See* Fed.R.Civ.P. 12(b); *Eastman Outdoors, Inc. v. Blackhawk Arrow Co.*, 329 F.Supp.2d 955, 958 (E.D.Mich.2004).

A motion for summary judgment under Rule 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Here, the parties do not contest the facts as they relate to the issues in the motion; rather they dispute the legal consequences that flow from them. The summary judgment procedure, which "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action," *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotes omitted), therefore, is an appropriate method to address the defendants' arguments that the plaintiff's case is barred by claim preclusion, the *Rooker–Feldman* doctrine, and lack of ripeness. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, 743 (6th Cir.2002); *see also id.* at 745 (noting that "claim preclusion" generally encompasses the old rules of merger and bar that are included within the doctrine of *res judicata*, and "issue

preclusion" covers the concept of collateral estoppel).

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, *see Chicago, B & Q.R. Co. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897), provides: "... nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The main purpose of the Michigan Inland Lake Levels Act is to establish lake levels that "most benefit the public," and "best protect the public health, safety, and welfare." Mich. Comp. Laws § 324.30701(h). The plaintiff claims that in setting the level of Avery Lake to benefit the public, the county has caused damage to the plaintiff's private property. He seeks damages under the Fifth Amendment since "[t]he primary purpose of the Takings Clause is to prevent the government from requiring certain individuals to bear burdens which should be borne by society as a whole." *Waste Mgmt., Inc. of Tenn. v. Metro. Gov't of Nashville and Davidson County*, 130 F.3d 731, 737 (6th Cir.1997) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123–24, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)).

The State may appropriate private property for public use through its power of eminent domain. *See United States v. Clarke*, 445 U.S. 253, 255–258, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980). When the State imposes a regulation that deprives private property of some or all of its economic value, a taking has occurred for which just compensation must be paid. *See Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 493–94 (6th Cir.2001). If the State effectuates such a taking without the benefit of formal proceedings, the land owner may bring an action based on inverse condemnation to recover just compensation. *San Diego Gas & Elec. Co. v.*

*City of San Diego*, 450 U.S. 621, 638 n. 2, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981) (observing that "[t]he phrase 'inverse condemnation' generally describes a cause of action against a government defendant in which a landowner may recover just compensation for a 'taking' of his property under the Fifth Amendment, even though formal condemnation proceedings in exercise of the sovereign's power of eminent domain have not been instituted by the government entity").

### A.

The defendants argue here, as they did in the State inverse condemnation action, that the higher year-round water level of Avery Lake did not cause the damage to the plaintiff's property, at least with respect to the settling of the house's foundation, and therefore they are not obliged to provide just compensation to the private land owner for the consequence of the public regulation. They claim that the plaintiff is foreclosed from alleging a causal connection between the higher lake level and the damage to the house because that issue was determined adversely in a prior judicial proceeding, and therefore the doctrine of issue preclusion bars litigating that question in this Court. They also contend that the plaintiff's gross negligence claim is barred because the State court granted summary judgment to the defendants on the same claim.

"When deciding whether to afford preclusive effect to a state court judgment, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal court to give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgment." *Stemler v. Florence*, 350 F.3d 578, 586 (6th Cir.2003) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56

(1984)). In Michigan, a judgment has preclusive effect under the doctrine of claim preclusion and bars a second action "when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Sewell v. Clean Cut Mgmt., Inc.*, 463 Mich. 569, 575, 621 N.W.2d 222 (2001). The Michigan Supreme Court has stated that claim preclusion applies " 'to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.' " *Pierson Sand & Gravel, Inc. v. Keeler Brass Co.*, 460 Mich. 372, 380, 596 N.W.2d 153, 157 (1999) (quoting *Hackley v. Hackley*, 426 Mich. 582, 585, 395 N.W.2d 906 (1986)). Michigan's version of the claim preclusion doctrine "bars relitigation of claims that are based on the same transaction or events as a prior suit." *Ditmore v. Michalik*, 244 Mich.App. 569, 577, 625 N.W.2d 462 (2001); *see also Jones v. State Farm Mut. Automobile Ins. Co.*, 202 Mich.App. 393, 401, 509 N.W.2d 829 (1993).

As previously mentioned, there were two proceedings in the Montmorency County court involving the plaintiff's property. The first concerned adjusting the lake level under the Michigan Inland Lake Levels Act, and the second was the plaintiff's action for damages based on inverse condemnation and gross negligence. In the inverse condemnation proceeding, the State court applied the doctrine of issue preclusion to bar litigation of the question of whether the adjustment of the water level of Avery Lake caused damage to the foundation of the plaintiff's home. That court reasoned that the same issue was decided in the prior proceeding to determine the normal lake level. The defendants urge this Court to apply the same reasoning to bar litigating the causation

issue here. However, the Court believes that the doctrine of issue preclusion was misapplied and that the question of whether the county has caused damage to the plaintiff's house may be litigated in an inverse condemnation action.

■■■ In order for the doctrine of issue preclusion to apply, the "first action" must be adjudicatory in nature. *See Pennwalt Corp. v. Public Serv. Com'n*, 166 Mich.App. 1, 7–8, 420 N.W.2d 156, 157 (1988) (citing *Senior Accountants, Analysts & Appraisers Ass'n v. City of Detroit*, 399 Mich. 449, 457–58, 249 N.W.2d 121 (1976)). A matter is "adjudicatory" when it serves to resolve an existing dispute between identifiable parties or allocates responsibility for past acts. Actions or decrees that establish standards for future conduct, prescribe rules, or fix guidelines or limits are not adjudicatory; rather they are legislative in nature. For instance, in *Morrison v. Lipscomb*, 877 F.2d 463 (6th Cir.1989), the court held that a determination by a judge declaring a moratorium on issuance of writs of restitution during the winter holiday season was an administrative act, not a judicial one. The court reasoned that "simply because rule making and administrative authority has been delegated to the judiciary does not mean that acts pursuant to that authority are judicial. This proposition is equally true if the authority has been traditionally given to the courts." *Id.* at 466. *See also Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) (holding that the Virginia supreme court's enactment of attorney disciplinary rules "[did] not arise out of a controversy which must be adjudicated, but instead out of a need to regulate conduct for the protection of all citizens," and therefore was not a judicial act). Simply because a proceeding is conducted by a judge does not render it adju-

dicatory since "it [is] the nature of the function performed, not the identity of the actor who performed it," that determines the character of the action. *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

▮ Although the proceeding to establish the normal level of Avery Lake was conducted by a judge, it cannot properly be characterized as judicial. The procedure outlined by the Michigan statute for determining the normal level of an inland lake requires a court to consider a variety of factors, such as "(a) [p]ast lake level records ... [;] (b) [t]he location of septic tanks, drain fields, sea walls, docks, and other pertinent physical features[;] (c) [g]overnment surveys and reports[;] (d) [t]he hydrology of the watershed; (e) [d]ownstream flow requirements and impacts on downstream riparians[;] (f) [f]isheries and wildlife habitat protection and enhancement[;] (g) [u]pstream drainage[;] (h) [r]ights of riparians[;] (i)[t]estimony and evidence offered by all interested persons[;] (j) [o]ther pertinent facts and circumstances." Mich. Com. Laws § 324.30707(4). The process may require a hearing to evaluate the competing interests of various constituencies, but it does not call for the determination of past disputes or claims. It is distinctly legislative in nature, much the same as regulating public utility rates. The Supreme Court has stated in the latter context that "[t]he establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial, in kind .... And it does not matter what inquiries may have been made as a preliminary to the legislative act. Most legislation is preceded by hearings and investigations. But the effect of the inquiry, and of the decision upon it, is determined by the nature of the act to which the inquiry and decision lead up." *Prentis v. Atlantic Coast Line Co.,*

211 U.S. 210, 226–27, 29 S.Ct. 67, 53 L.Ed. 150 (1908). Similarly, the proceeding to determine the normal level of Avery Lake established a rule for the future; it did not resolve a past dispute or resolve a pending claim.

The hearing conducted by the Montmorency County court to establish the normal level of Avery Lake was therefore not an adjudicative proceeding. Under Michigan law, such an "administrative determination ... is not 'adjudicatory in nature' ... [t]hus, res judicata and collateral estoppel cannot apply in the pure sense." *Pennwalt Corp.,* 166 Mich.App. at 9, 420 N.W.2d at 157. The State court looked to the lake level proceeding as a predicate for applying the doctrine of issue preclusion to the causation question in the inverse condemnation case and did not reach the merits of that issue. This Court finds, therefore, that neither State proceeding serves as a basis to bar consideration of the causation issue in the plaintiff's action here under Section 1983.

▮ The application of the rule to the gross negligence claim, however, is another matter. The State court held that the plaintiff had failed to come forward with sufficient evidence to create a material question of fact as to that claim and that the defendants were entitled to judgment as a matter of law. Michigan law treats summary judgments as a final decision on the merits; litigating the gross negligence claim in federal court, therefore, is precluded. *See Franklin v. City of Pontiac,* 887 F.Supp. 978, 983 (E.D.Mich.1995).

### B.

▮ The defendants also argue that the plaintiff's Section 1983 claim and inverse condemnation action amounts to an appeal from the State court decision to a lower federal court that is barred by the *Rooker–Feldman* doctrine. That rule is

based on the pronouncements in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (holding that federal court review of state court proceedings is jurisdictionally limited to the Supreme Court of the United States by 28 U.S.C. § 1257). The doctrine stands for the "simple ... proposition that lower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments." *Anderson v*, 266 F.3d at 492. The doctrine applies in two situations: (1) a direct attack of the substance of a state court decision and (2) a challenge to the procedures used by the state court to arrive at its decision. *Id.* at 493. The *Rooker–Feldman* doctrine includes cases brought under 42 U.S.C. § 1983 because of the "full faith and credit" given to state judicial proceedings. *Gottfried v. Med. Planning Servs., Inc.*, 142 F.3d 326, 330 (6th Cir.1998).

The plaintiff contends that the *Rooker–Feldman* doctrine does not apply here because there is no final State court adjudication with respect to his takings claim. Because the lake-level proceeding was not adjudicatory, the Court agrees. The State inverse condemnation action plainly was a judicial proceeding, but there is a more fundamental reason that *Rooker–Feldman* does not present an obstacle to proceeding in this Court even in light of that action.

In *DLX, Inc. v. Kentucky*, 381 F.3d 511 (2004), the Sixth Circuit held that the *Rooker–Feldman* doctrine is inapplicable to federal court actions seeking just compensation for administrative takings by State governments, even when there has been a prior, unsuccessful State court action for inverse condemnation. In that case, the court observed that Supreme Court jurisprudence requires litigants to avail themselves of State administrative and judicial remedies that could provide just compensation before a federal claim based on the Fifth Amendment becomes ripe. *Id.* at 518–19 (citing *Williamson County Regional Planning Comm. v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)). The court reasoned, therefore, that since "the Supreme Court in *Williamson* ... clearly contemplates that after a state just-compensation proceeding, a federal-court action will be filed[,] *Rooker–Feldman* is inapplicable here." *Id.* at 517.

The *Rooker–Feldman* doctrine does not bar the plaintiff's action in this Court under Section 1983 for a violation of the Fifth Amendment Takings Clause based on inverse condemnation.

## C.

The defendants also point to *Williamson* to support their argument that the plaintiff's Fifth Amendment claim is not ripe and therefore there is no subject matter jurisdiction. The Court agrees.

"Article III of the Constitution limits the jurisdiction of federal courts to consideration of actual cases and controversies, and federal courts are not permitted to render advisory opinions." *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir.2002) (citing *Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623, 627 (6th Cir.1987)). " 'Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.' " *Bigelow v. Michigan Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir.1992) (quoting *Southern Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir.1990)).

■ In *Williamson*, the Supreme Court held that a land owner's Fifth Amendment takings claim against a local government is not ripe until the claimant has availed himself of all the administrative remedies through which the government might reach a final decision regarding the regulations that effect the taking, and the State's judicial remedies for determining or awarding just compensation. *See* 473 U.S. at 186, 105 S.Ct. 3108 (holding that "[b]ecause respondent has not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property, nor utilized the procedures Tennessee provides for obtaining just compensation, respondent's claim is not ripe"). The first condition, which has come to be known as "prong-one ripeness," *see DLX*, 381 F.3d at 518, requires a claimant to utilize available administrative mechanisms, such as seeking variances from overly-restrictive or confiscatory zoning ordinances, so that a federal court can assess the scope of the regulatory taking. *Williamson*, 473 U.S. at 190–91, 105 S.Ct. 3108. The second condition ("prong-two ripeness") is based on the principle that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id.* at 194, 105 S.Ct. 3108. Consequently, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. 3108.

■ In this case, there is no "prong-one" ripeness issue since the plaintiff exhaustively sought an alteration of the level of Avery Lake in order to alleviate what he perceived to be the insidiously damaging effect of the year-round high water on his land and structures.

However, Michigan courts have recognized that, under certain circumstances, a property owner may assert a claim of inverse condemnation against state and local government for the purpose of seeking just compensation. *See Peterman v. Dep't of Natural Resources*, 446 Mich. 177, 187–188, 521 N.W.2d 499 (1994) (holding that "the State of Michigan recognizes a cause of action, often referred to as an inverse or reverse condemnation suit, for a de facto taking when the state fails to utilize the appropriate legal mechanisms to condemn property for public use"); *Hart v. Detroit*, 416 Mich. 488, 500, 331 N.W.2d 438 (1982). The plaintiff commenced such an action in State court but then voluntarily dismissed it after receiving an adverse ruling on but a portion of his claim. The failure to see that action through to a conclusion renders his federal claim unripe under *Williamson's* "prong-two" requirement.

The plaintiff argues that he already has been denied just compensation because of the adverse ruling by the State court on his claim for damages to his house. He acknowledges that "a plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages." *Hinojosa v. Dep't of Natural Res.*, 263 Mich.App. 537, 688 N.W.2d 550 (2004) (citing *Heinrich v. Detroit*, 90 Mich.App. 692, 698, 282 N.W.2d 448 (1979)). But he insists that the State court's application of the issue-preclusion doctrine deprived him of the opportunity to establish the causal link between the higher lake level and the settling of the foundation.

■ However, the plaintiff also claims damage to the sea wall resulting from the mounding of earth in the area between the house and the lake shore—the portion of the claim that he voluntarily dismissed in State court. He has given no

indication that he wishes to abandon that part of his claim, yet he has not sought just compensation for that "taking" in State court, and therefore he cannot establish the ripeness of a Fifth Amendment takings claim here. To allow the plaintiff to proceed on one part of his claim for damages would violate the "nonsegmentation principle," which "holds that when evaluating the effect of a regulation on a parcel of property, the effect of the regulation must be viewed with respect to the parcel as a whole." *K & K Constr., Inc. v. Dep't of Natural Res.*, 456 Mich. 570, 578, 575 N.W.2d 531, 536 (1998) (citing *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 498, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987)). Thus, in an adverse condemnation case under Michigan law, "[c]ourts should not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. Rather, we must examine the effect of the regulation on the entire parcel, not just the affected portion of that parcel." *Id.* at 578, 575 N.W.2d at 536 (internal quotes and citation omitted).

Before pursuing a takings claim in this Court, the plaintiff, therefore, must pursue an inverse condemnation claim in State court as to the entire parcel of land affected by the government regulation. He may not obtain complete relief in such an action. But only then will his Fifth Amendment takings claim ripen into an action cognizable in this Court.

### III.

The Court finds that the plaintiff's claim for damages based on gross negligence is barred by a prior State court ruling. His Section 1983 claim based on the Fifth Amendment Takings Clause grounded in the theory of inverse condemnation is not barred by either the doctrine of issue preclusion or the *Rooker–Feldman* doctrine. Those claims, however, are not ripe for adjudication, and therefore this Court lacks subject matter jurisdiction to hear them.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss or for summary judgment [dkt. # 13] is **GRANTED IN PART and DENIED IN PART.**

It is further **ORDERED** that Count III of the amended complaint alleging gross damages is **DISMISSED WITH PREJUDICE.**

It is further **ORDERED** that Counts I and II of the amended complaint alleging claims under 42 U.S.C. § 1983 and inverse condemnation are **DISMISSED WITHOUT PREJUDICE.**