**Thomas NEUENFELDT, Plaintiff,**

**v.**

**WILLIAMS TOWNSHIP, Defendant.**

**No. 04–10133–BC.**

United States District Court,
E.D. Michigan,
Northern Division.

Feb. 9, 2005.

Victor J. Mastromarco, Jr., Mastromarco & Jahn, Saginaw, MI, for Plaintiff.

Thomas R. Meagher, Foster, Swift, Lansing, MI, for Defendant.

## OPINION AND ORDER DENYING DE-FENDANT'S MOTION TO DISMISS AND DIRECTING PLAINTIFF TO AMEND COMPLAINT

LAWSON, District Judge.

The plaintiff in this case has filed an amended complaint alleging that Williams Township officials treated him unfairly when they rejected his proposed plat plan for developing a subdivision and requiring instead that the development include two "stub streets" as a condition of approval. He claims that the Township's requirements for his proposed development was more exacting than for other developers who were similarly situated, and his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment have been violated. The Township views the plaintiff's claim as one of regulatory taking. Because the plaintiff did not appeal the local decision to deny a variance or bring a state action for inverse condemnation, the Township argues that the plaintiff's claim is not ripe and the Township has filed a motion to dismiss for want of subject matter jurisdiction. The Court heard the parties' arguments in open court on February 2, 2005. The Court now finds from the information contained in the plaintiff's brief and affidavit that he does not attempt here to assert a takings claim. Rather, the plaintiff alleges other constitutional violations that are ripe for adjudication. However, because certain key allegations were not included in the complaint, the Court finds that an amendment is necessary to fully set forth the plaintiff's non-takings theories of recovery. The defendant's motion to dismiss, therefore, will be denied unless the plaintiff fails to file a second amended complaint that corrects this deficiency within fourteen days.

### I.

Under state and local law, residential developers who propose to subdivide tracts of land must submit to local municipalities a subdivision plan that sets out individual lots and proposed streets. When a township's long range plan contemplates the interconnection of subdivision streets, that is, throughways among subdivisions that do not connect to major thoroughfares, municipal planners may require the first development in a larger tract to lay out and build "stub streets" that dead end at the boundary of the development but that will connect to the adjoining subdivision in the future when the land is developed. Stub streets can be expensive and disadvantageous to a developer because land otherwise buildable must be set aside for the stub street and the future prospect of through traffic near the affected lots may lower their value.

The plaintiff, Thomas Neuenfeldt, owns real property located in Williams Township. He left his job at Dow Chemical Company to embark on a new career as a land developer; the Williams Township development was his first project, a subdivision that he refers to as Carter Ridge. Some time before June 2001, Neuenfeldt submitted a subdivision plan to various local government agencies. The plan set forth the lots and streets but included no stub streets. The County Road Commission, the Department of Environmental Quality, the Fire Department, the Water and Sewer Departments, and other agencies approved the plan. However, the Williams Township Planning Commission considered and denied the plaintiff's plan at a public meeting because it lacked stub streets.

At the meeting, upon receiving the denial, the plaintiff responded verbally by accusing the commission of showing favoritism because the Planning Commission had not required stub streets in another subdivision for a similar development called Briarwood that was being developed by

the Williams Township engineer. The plaintiff alleges that, following the public meeting, the Planning Commission Chairman admitted the Williams Township Board had directed the Planning Commission to approve the Briarwood subdivision plan without stub streets. The plaintiff learned that the defendant had approved subdivisions called Gray Hawk and Zielinski Estates without stub streets as well. The plaintiff also believes that the brother of a Planning Commission member received special treatment by receiving approval of the subdivision plan for a development called Country Estates # 2; the plan included no stub streets.

The plaintiff avers in an affidavit that the Township Planner told the plaintiff that in "no way, no how will you ever get your subdivision passed without stub streets, period." Pl.'s Aff. ¶ 15. The plaintiff states a Planning Commission member threatened to deny approval of a variance on an unrelated matter if the plaintiff continued to contest the stub street issue.

On June 21, 2001, the plaintiff requested a variance of the defendant's zoning ordinance requiring the creation of stub streets. The defendant denied the request and determined that two stub streets must be placed in the proposed subdivision. The plaintiff did not pursue an appeal of the defendant's decision, nor did he file an inverse condemnation action in state court.

On May 27, 2004, the plaintiff filed a two-count complaint in this Court based on 42 U.S.C. § 1983 claiming that the defendant violated his right to equal protection of the laws and due process. It is the plaintiff's theory that the defendant made the conditions of the subdivision plan more difficult in order to interfere with his plans to develop land in the area and compete with other developers who had an inside relationship with Township officials. After the plaintiff filed his complaint, the Township modified its requirements of the plaintiff's subdivision plan by reducing the number of required stub streets from two to one. However, the plaintiff avers that the township supervisor told him that "it would be a shame if something else happened to not get your subdivision passed if you continue to cause problems for us." Pl.'s Aff. ¶ 24. The plaintiff submitted a plan with one stub street, which received approval. The defendant apparently was required to segregate cash in an account as security for completing the stub street. He contends that after the complaint was filed, the defendant prematurely withdrew $27,000 from his bank account before completion of the subdivision.

The plaintiff amended his complaint on August 24, 2004; the amended complaint contains the same counts, but it includes allegations that the defendant deprived him of equal protection by arbitrarily requiring stub streets and subjected him to a process different than "other property owners [who] were not required to have 'stub streets.'" Am.Compl. ¶ 28. The plaintiff seeks damages and equitable relief for delaying the development of the property and loss of property value and business opportunities. On October 12, 2004, the defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) arguing that the plaintiff's claims are not ripe. The plaintiff opposes the motion.

## II.

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge a court's jurisdiction over the subject matter of a claim. When the defendant files a motion pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir.2003). The defendant's argument that the plaintiff's claims are not ripe addresses the court's subject-

matter jurisdiction. "A court lacks jurisdiction over the subject matter if the claim is not yet ripe for judicial review." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir.2002). Put another way, "[r]ipeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Bigelow v. Michigan Dept. of Natural Resources*, 970 F.2d 154, 157 (6th Cir.1992) (internal quotes and citations omitted).

In considering a motion under Rule 12(b)(1), the Court may treat a ripeness challenge as "facial," requiring only consideration of the complaint when factual findings are not required for the decision. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir.2004). Otherwise, if the ripeness attack on the complaint requires consideration of factual issues, the Court should look at evidence of a developed record to determine jurisdiction. *Id.* at 525. In this case, the Court has examined evidence beyond the pleadings at the plaintiff's urging.

■■■ The Sixth Circuit has described the ripeness as a constitutional necessity to "ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities." *Dixie Fuel Co. v. Comm'r of Social Sec.*, 171 F.3d 1052, 1057 (6th Cir.1999). Generally, a court examines three factors when evaluating the ripeness of a claim: "(1) the likelihood that the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and, (3) hardship to the parties if judicial review is denied." *Norton*, 298 F.3d at 554. The defendant here attempts to cast this case as a takings action even though the plaintiff specifically has not sought in his amended complaint just compensation for the loss he suffered as a result of the Township's enforcement of its stub street regulation. It is well established that when a local governmental authority imposes a regulation that deprives private property of some or all of its economic value, a taking has occurred for which just compensation must be paid. *See Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 493–94 (6th Cir.2001). If the local authority causes such a taking without the benefit of formal proceedings, the land owner may bring an action based on inverse condemnation to recover just compensation. *San Diego Gas & Elec. Co. v. City of San Diego*, 450 U.S. 621, 638 n. 2, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981) (observing that "[t]he phrase 'inverse condemnation' generally describes a cause of action against a government defendant in which a landowner may recover just compensation for a 'taking' of his property under the Fifth Amendment, even though formal condemnation proceedings in exercise of the sovereign's power of eminent domain have not been instituted by the government entity"). If this matter is viewed as a takings case, then plainly the action is not ripe, since, although allowance of partial relief through a variance may be considered a final decision, the plaintiff has not attempted to seek compensation by means of an inverse condemnation action.

Just late last year, this Court addressed the question of ripeness when landowners come to federal court seeking damages resulting from the effect of enforcing land-use regulations as to their property. *See VanWulfen v. Montmorency County*, 345 F.Supp.2d 730 (E.D.Mich.2004). There, the Court observed:

In *Williamson [County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)], the Supreme Court held that a land owner's Fifth Amendment takings claim against a local government is not ripe until the claimant has availed himself of all the administrative remedies through which the govern-

ment might reach a final decision regarding the regulations that effect the taking, and the State's judicial remedies for determining or awarding just compensation. *See* 473 U.S. at 186, 105 S.Ct. 3108 (holding that "[b]ecause respondent has not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property, nor utilized the procedures Tennessee provides for obtaining just compensation, respondent's claim is not ripe"). The first condition, which has come to be known as "prongone ripeness," *see DLX*, [*Inc. v. Kentucky*], 381 F.3d [511,] 518 (6th Cir. 2004), requires a claimant to utilize available administrative mechanisms, such as seeking variances from overlyrestrictive or confiscatory zoning ordinances, so that a federal court can assess the scope of the regulatory taking. *Williamson*, 473 U.S. at 190–91, 105 S.Ct. 3108. The second condition ("prong-two ripeness") is based on the principle that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id.* at 194. Consequently, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. 3108.

*Id.* at 742.

There is no dispute in this case that the plaintiff has not pursued an inverse condemnation claim or any other possible remedy to obtain just compensation for what might be perceived as a regulatory taking resulting from enforcing the stub street ordinance. But not all claims against local governments relating to land use are treated as takings claims. Although the Sixth Circuit in *Bigelow* subjected the plaintiffs' equal protection and due process

claims filed with their takings claims to *Williamson's* ripeness definitions, *see* 970 F.2d at 158–59, that court also has held that some claims become ripe upon the occurrence of the offending event without the requirement that the injured land owner seek redress in state administrative or judicial proceedings. For instance, in *Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir.1992), the court held that a final decision of a municipality's planning commission denying site plan approval and a subsequent denial of a variance is sufficient to satisfy the finality requirement. The court stated that "the very existence of an allegedly unlawful zoning action, without more, makes a substantive due process claim ripe for federal adjudication." *Id.* at 1215 (citing *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir.1991)). The court reversed the district court's dismissal on ripeness grounds and pronounced that in "holding that the taking theory subsumes all other theories in zoning cases, the trial court in the instant case would impose these stringent ripeness requirements on all zoning cases." *Ibid. See also Nasierowski*, 949 F.2d at 895 (holding that a plaintiff did not have to seek a variance challenging a city council's enactment of a zoning change because the denial "was an act that *in and of itself* inflicted immediate injury on [the plaintiff], the procedural due process claim was ripe for federal adjudication"); *Dubuc v. Green Oak Township*, 810 F.Supp. 867, 871 (E.D.Mich.1992) (observing "[a]s the court of appeals noted, plaintiff's mere statement of the claim makes it ripe for adjudication in this Court. Plaintiff is not required to await for a final determination of the zoning board of appeals before making a due process claim. This is especially the case where, as here, a part of the alleged due process violation is the inaction of the zoning board of appeals").

■ In this case, the plaintiff does not allege an unconstitutional taking. Rather, the plaintiff contends that the Township used its stub street ordinance to stifle competition from him to benefit well-connected competitors including the Township engineer and a relative of a planning commission member. The essence of the plaintiff's claim is that he was subjected to unequal treatment when the township advanced the commercial interests of other, private individuals at his expense.

The amended complaint so viewed in light of the additional facts is patterned after the claim brought in *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). In that case, a private property owner challenged a village's action of requiring the owner to convey a thirty-three-foot easement as a condition of connecting her property to the municipal water supply. Because the village required only a fifteen-foot easement from nearly everyone else, the plaintiff claimed that she was being discriminated against as a "class of one." Although the village eventually relented and allowed the fifteen-foot easement, the plaintiff filed suit and brought claims under the Equal Protection and Due Process Clauses. This treatment, the plaintiff claimed, stemmed from animus created by her successful filing of a lawsuit against the village on a previous and unrelated occasion.

Although the Court did not specifically address the question of ripeness, it held that the complaint stated a valid claim "under traditional equal protection analysis," irrespective of the municipality's subjective ill will. The Court observed that " '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' " *Id.* at 565 (quoting *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 445, 43 S.Ct. 190, 67 L.Ed. 340 (1923)). The protection of the Clause extends even to "claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564, 120 S.Ct. 1073. In a concurring opinion, Justice Breyer addressed the concern that allowing such claims could constitutionalize routine zoning enforcement cases by observing that "the presence of [the defendant's illegitimate animus or ill will toward the plaintiff] in this case is sufficient to minimize any concern about transforming run-of-the-mill zoning cases into cases of constitutional right." *Id.* at 565, 120 S.Ct. 1073 (Breyer, J., concurring). That element is present in this case as well.

■ To the extent that the plaintiff contends that the commercial interests of others have been protected at his expense, the Sixth Circuit has proclaimed "that protecting a discrete interest group from economic competition is not a legitimate governmental purpose." *Craigmiles v. Giles,* 312 F.3d 220, 224 (6th Cir.2002). Regulations designed solely with that purpose in mind offend substantive due process. Similarly, several courts in this Circuit have held that misuse of government regulations to prevent or inhibit a citizen from pursuing a career or engaging in a lawful occupation can be a deprivation of liberty that amounts to a due process violation. *See Sanderson v. Village of Greenhills,* 726 F.2d 284 (6th Cir.1984) (misuse of "amusement device" ordinance to prevent plaintiff from operating a billiard parlor); *Wilkerson v. Johnson,* 699 F.2d 325 (6th Cir. 1983) (intentional misapplication by board of barber examiners to prevent of delay the plaintiff from obtaining a barber's li-

cense); *R.S.S.W., Inc. v. City of Keego Harbor*, 18 F.Supp.2d 738, 742 (E.D.Mich. 1998) (city officials' actions of "inordinate police scrutiny," arbitrary use of zoning authority, passage of an overbroad liquor ordinance, and filing an unwarranted complaint with the Michigan Liquor Control Commission alleged to constitute a campaign of harassment to prevent plaintiff from operating a brewpub). These cases illustrate the Sixth Circuit's holding in *Pearson* that "the very existence of an allegedly unlawful zoning action, without more, makes a substantive due process claim ripe for federal adjudication." *Pearson*, 961 F.2d at 1215.

The Court believes that the plaintiff has stated adequate facts to establish that his claims do *not* arise under the Fifth Amendment's Takings Clause. Rather, the claims arise under the Equal Protection and Due Process Clauses, and they are ripe for adjudication. The plaintiff sought a variance, received "half-a-loaf," and now sues for damages because he believes that he is the victim of unequal treatment and arbitrary application of the stub street ordinance. There is a substantial disconnection, however, between the facts pleaded in the amended complaint and the added facts contained in the plaintiff's affidavit and response to the motion to dismiss. The plaintiff at oral argument asked for an opportunity to amend if the Court shared that view.

### III.

The amended complaint reasonably may be viewed by the defendant as a complaint that the application of the stub street regulation effectuates a regulatory taking for which just compensation is owed. However, the plaintiff has made clear that his intention is to assert different constitutional violations, which the Court determines are ripe for adjudication. The amended complaint ought to be amended further to set forth those claims so that the parties properly will be guided during discovery and, perhaps, subsequent motion practice.

Accordingly, it is **ORDERED** that the plaintiff shall file a second amended complaint on or before **February 25, 2005** that sets forth the claims described in his affidavit and motion brief.

It is further **ORDERED** that the defendant's motion to dismiss [dkt # 13] is **DENIED.**

It is further **ORDERED** that the defendant may renew its motion if the plaintiff fails to amend his complaint within the time provided, or if the amended complaint fails to set forth claims that are ripe for adjudication.